**Sherry Gail FREEL et al.,
Plaintiffs-Appellants,**

**v.**

**FOSTER FORBES GLASS COMPANY,
Defendant-Appellee.**

**No. 2–1082A339.**

Court of Appeals of Indiana,
First District.

June 14, 1983.

Rehearing Denied July 8, 1983.

---

William E. Beck II, Martin & Beck, Kokomo, for plaintiffs-appellants.

Albert C. Harker, Kiley, Osborn, Brown, Kiley, Harker & Rogers, Marion, for defendant-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiffs-appellants Sherry Gail Freel, Tamara Lynn Freel, and Timothy Wayne Freel (surviving dependents of Thomas Freel, deceased) (Freels) appeal the decision of the Full Industrial Board (Board) awarding $6,682.00 for temporary total disability benefits subject to a credit for amounts already paid by defendant-appellee Foster Forbes Glass Company (Foster Forbes) totaling $15,213.04. Mrs. Freel contends that Foster Forbes was not entitled to credit for these payments. We affirm the decision of the Board.

### STATEMENT OF THE FACTS

On July 14, 1978 Thomas Freel was employed by Foster Forbes as an upkeep man. Foster Forbes manufactures and markets glass containers, and its upkeep men maintain and repair the forming machines that make the containers. Upkeep men are a skilled group of employees who are essential to the operation of the plant.

As a special incentive to encourage upkeep men to remain with the company in that job classification, Foster Forbes offered them a "wage continuation plan," which was not a part of their union contract. Under this plan upkeep men who had worked 6,000 hours in that classification were guaranteed to receive their full wages if they were unable to work due to any illness or accident. The plan applied to both occupational and non-occupational illnesses and accidents, and the benefits were to continue for up to one year. The contract is apparently silent regarding the relationship of these benefits to workmen's compensation benefits.

Thomas Freel burned his right hand while repairing a malfunctioning machine on July 14, 1978. It was undisputed that this injury arose in the course of his employment, and Foster Forbes paid all statutory medical expenses due by virtue of the injury. In accordance with its wage continuation plan, Foster Forbes also continued to pay Thomas Freel his regular wages while he was unable to work. The payments were made as follows:

(a) for the work days from July 14, 1978 through December 31, 1978 at the rate of $275.40 per week for a total of $6,727.75;

(b) from January 1, 1979 through March 31, 1979 at the rate of $275.40 per week for a total of $3,580.20;

(c) from April 1, 1979 through June 17, 1979 and from September 19, 1979 through October 27, 1979 at the rate of $302.00 for a total of $4,965.06.

All these payments totaled $15,273.01. During the periods in which these payments were made, Thomas Freel was disabled and performed no work for Foster Forbes.

In late March 1979 Thomas Freel asked the Foster Forbes personnel office to revise his W–2 Form for his 1978 wages. He requested that they multiply the number of days he was off work by the applicable temporary total disability rate in effect under Workmen's Compensation, deduct that total from his gross income, and issue a corrected W–2 Form. Personnel complied with this request and in 1980 performed the same correction, again at Thomas Freel's request. These adjustments were computed in the same way, involved the identical transfer of funds, and had the same tax consequences as if he had actually received temporary total disability payments instead of wages under the wage continuation plan. Foster Forbes is self-insured for purposes of workmen's compensation benefits as well as

sickness and accident benefits, and all such payments are made with the same corporate account payroll funds.

Thomas Freel refused to sign a Form 12 Agreement for Compensation, and Foster Forbes made no temporary total disability payments. He filed his Form 9 on August 3, 1979, and on November 24, 1980 Thomas Freel died. The record does not indicate that his death resulted from his occupational injury. The named plaintiffs in this case are stipulated to be his dependents. A hearing was held on September 29, 1981, and on November 9, 1981 the hearing judge entered an award for $6,682.00 in temporary total disability benefits. Nothing was awarded for permanent partial impairment or unpaid medical expenses. Foster Forbes was credited with $15,213.04 for its wage continuation payments, and the hearing judge ordered that Thomas Freel recover nothing further from Foster Forbes. The findings of the hearing judge were taken almost verbatim from the parties' stipulations. The Full Industrial Board reviewed the decision, and a majority of the Board affirmed and adopted the findings and conclusions of the hearing judge.

### ISSUE

The Freels present the following issue for our review:

Whether the Industrial Board of Indiana had jurisdiction to modify the wage continuation contract to provide that its benefits were reduced by the amount of temporary total disability benefits statutorily payable even though the contract gave the employer no right to credit its statutory liability with the wage continuation payments.

### DISCUSSION AND DECISION

The Freels' argument is twofold: that the Board lacked jurisdiction to modify the contract, and that Ind.Code 22–3–3–23 prohibits any credit or deduction in this case.

The only authority the Freels cite in support of their first argument is *Inland Steel Company v. Almodovar*, (1977) 172 Ind. App., 556, 361 N.E.2d 181, and they direct our attention to the following passage from the opinion:

"If Inland, and not some insurance company, paid these 'non-occupational' benefits to or on behalf of plaintiff pursuant to some contract which gives Inland a right to deduct them from its liability to plaintiff under this compensation award then it may be that the Board has jurisdiction to make provision therefor in the award. But if the benefits were paid by an insurance company which is not Inland's workmen's compensation carrier (if, indeed, it is carrier-insured, rather than self-insured) it appears to be, without question, beyond the Board's jurisdiction to attempt to adjudicate plaintiff's liability or non-liability to such insurer. The facts stipulated are insufficient to confer jurisdiction on the Board to adjudicate whether Inland should have credit for the payments the parties have stipulated were made."

*Id.* 361 N.E.2d at 188. The above excerpt from the opinion is largely dictum, and the facts of this case are distinguishable. In *Inland Steel* the court focused on the issue of plaintiff's liability to an insurer who may have paid benefits under a non-occupational group insurance plan. In the case at bar it is the employer who has made payments from its payroll account, and any Workmen's Compensation payments due the Freels would come from the same source since Foster Forbes is self-insured. The *Inland Steel* dictum tends to support Foster Forbes in this regard. Although *Inland Steel* indicates that the contract should specifically provide for any credit for Workmen's Compensation benefits, no authority is cited for this position, and we are aware of no provision in our Workmen's Compensation Act which would require such a provision.

The Freels' argument characterizes the Board's decision as a modification of the wage continuation contract. We do not agree with this view. The issue before the Board was not the amount of wage continuation payments owing under the contract, but the amount of temporary total disabili-

ty benefits owing to Thomas Freel. The wage continuation benefit had been paid in full as promised. The effect of those payments on Foster Forbes' duty to pay temporary total disability benefits was properly before the Board based on Ind.Code 22–3–3–23(a):

"Any payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of chapters 2 through 6 of this article were not due and payable when made, may, subject to the approval of the industrial board, be deducted from the amount to be paid as compensation. However, the deduction shall be made from the distal end of the period during which compensation must be paid, except in cases of temporary disability."

■ Contrary to the Freels' argument, the fact that the wage continuation payments were due and payable under the contract does not mean that no deduction can be made under § 23(b) above. So long as the payments were not due and payable under chapters 2 through 6, the Board had the discretion to deduct them from Foster Forbes' liability.

■ The purpose of the Workmen's Compensation Act is to avoid litigation and to place the burden of caring for injured employees on the industry that employs them and the consumers of its products. *Guevara v. Inland Steel Company,* (1949) 120 Ind.App. 47, 88 N.E.2d 398; *see Bedwell v. Dixie Bee Coal Corporation,* (1934) 99 Ind.App. 336, 192 N.E. 723. However, several sections of the act and the cases construing them evince a strong policy against double recovery. See Ind.Code 22–3–2–13, 22–3–3–10, 22–3–3–23, 22–3–3–31; *Bethlehem Steel Corporation v. Dipolito,* (1976) 168 Ind.App. 417, 344 N.E.2d 67; *Snow Hill Coal Corporation v. Cook,* (1952) 123 Ind.App. 240, 109 N.E.2d 110; *Bebout v. F.L. Mendez & Company,* (1941) 110 Ind.App. 28, 37 N.E.2d 690. If Foster Forbes is not given credit for its earlier wage continuation payments, the Freels not only will recover twice for the same injury, but will receive from the employer more money for the period of disability than could have been earned if there had been no injury. We do not believe that such a result is consistent with the purposes of the act. In *Cowan v. Southwestern Bell Telephone Co.,* (1975) Mo.App., 529 S.W.2d 485, the employer had paid the injured employee $9,266.68 under its disability plan which specifically included Workmen's Compensation benefits. The employer was given credit for these payments, and although the case is distinguishable from this one, the following discussion applies equally well to our facts:

"An employer who has paid an employee at the time of that employee's greatest need more than he was obligated to pay should not be penalized by being denied full credit for the amount paid above the requirements of the act as against the amount which might subsequently be determined to be due the employee. To do so would inevitably cause employers to be less generous. By limiting the payments the employer can safely make to the amount of temporary total disability the result would be that the employee would lose his full salary at the very moment he needs it most. Such a construction is neither liberal nor one made with a view to the public welfare."

*Id.,* 529 S.W.2d at 488.

Although there are no Indiana cases exactly on point, one is sufficiently similar to the case at bar to influence our decision. In *Underhill v. Central Hospital for the Insane,* (1917) 66 Ind.App. 44, 117 N.E. 870, the injured employee received his full salary, room, board, and laundry (benefits that were part of his regular compensation) for nearly eleven months after he was injured. He performed no services after his injury, and the opinion mentions no contract requiring the employer to make such payments. The Board allowed the employer a deduction for the amount of cash paid the employee after the initial month following his injury. The court found the deduction was justified based on § 41 of the Workmen's Compensation Act, Acts 1915, p. 392, (Repealed) the predecessor of Ind.Code 22–3–3–23.

It is worth noting that a similar result was sanctioned implicitly in *United Toolcraft, Inc. v. Sousley,* (1958) 128 Ind.App. 181, 147 N.E.2d 558. In that case the employee mistakenly believed his injury was non-occupational and received payments from the company's group insurance plan covering non-occupational disability and medical expenses. This court held that the employee was not barred from obtaining Workmen's Compensation benefits and concluded with the statement, "Appellee [employee] frankly concedes appellants [employer] were properly allowed by the award in this case credit for payments made under the disability policy." *Id.,* 128 Ind.App. at 188, 147 N.E.2d 558.

Other jurisdictions have addressed similar questions and reached divergent results. *See e.g., Moore v. Travelers Insurance Company,* (1955) La.App., 79 So.2d 507; *Herrera v. Workmen's Compensation Appeals Board,* (1969) 71 Cal.2d 254, 78 Cal.Rptr. 497, 455 P.2d 425; *Cowan, supra; Tulsa Rolling Mills Co. v. Krejci,* (1931) 149 Okl. 103, 299 P. 225; *Brown v. Western Electric Company,* (1983) Tenn., 646 S.W.2d 912; Annot. 119 A.L.R. 920.

The Freels direct our attention to *Brown,* in which the Supreme Court of Tennessee denied the employer credit for payments made after the injury in the amount of the employee's salary. The court relied on a statute that is the counterpart of Ind.Code 22–3–2–15, which reads in pertinent part:

> "No contract or agreement, written or implied, no rule, regulation or other device shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by chapters 2 through 6 of this article."

We do not agree with the Tennessee Court's conclusion that this section forbids deductions from compensation benefits. Ind. Code 22–3–3–23(a) expressly permits such deductions when the employer has made payments not due and payable under the act. Foster Forbes was not relieved of its obligations; on the contrary it had more than satisfied them.

The Freels also cite *Indiana Bell Telephone Company, Incorporated v. Ernst,* (1983) Ind.App., 444 N.E.2d 1258. This case held that an employer was not entitled to credit for payments it had made prior to the award. The employer had argued that the payments were a substitute system of insurance under Ind.Code 22–3–5–4, but had failed to offer evidence of prior Board approval; hence, the employer had failed to meet its burden of proof. In the case at bar, Foster Forbes does not contend that its wage continuation plan constitutes a substitute system of insurance. Furthermore, there was unrefuted testimony by a Foster Forbes employee who administered its Workmen's Compensation insurance that its self-insurance plan was registered with the Industrial Board.

We conclude that Foster Forbes is entitled to credit for its payments to Thomas Freel under the wage continuation plan. The decision of the Board is affirmed.

Affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.