**Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,**

v.

**Phillip Anthony SARCIONE; Florence Water & Sewer Commission; and Workers' Compensation Board, Appellees.**

No. 93–SC–91–WC.

Supreme Court of Kentucky.

Nov. 24, 1993.

David Randall Allen, Louisville, for appellant.

Nick Benson, Walton, for appellee Sarcione.

Robert C. Cetrulo, Covington, for appellee Florence Water and Sewer Com'n.

## OPINION OF THE COURT

On July 22, 1986, claimant sustained a work-related injury to his knee for which he later sought compensation benefits. On August 11, 1987, he entered into a settlement agreement with his employer whereby the employer agreed that the 56.32 weeks of temporary, total disability, which had already been paid, would be followed by a 51.4% permanent, partial disability benefit. Under the terms of the agreement, the permanent, partial disability benefit was to be reduced to present value and paid in a lump sum of $39,500. The settlement agreement also contained the following language:

> The parties agree that said percentage and sum are reasonable and shall be paid by the employer; provided, however, a bona fide controversy exist between the Special Fund and the employer as to liability and/or apportionment, and a determination of those issues is hereby reserved to the Board. If the Board determines apportionment against the Fund, then the employer shall be reimbursed by the Fund. Voluntary participation in this settlement was offered to the Special Fund, and rejected by it. Plaintiff also waives all future medicals and rehabilitation benefits.

The Special Fund was invited to participate in the agreement, but refused to do so and raised no objection.

On August 14, 1987, a copy of the agreement was filed with the "old" Workers' Compensation Board ("old" Board). On that same day claimant filed a *pro se* application for permanent, partial disability benefits, naming his employer and the Special Fund as party defendants. The "old" Board approved the settlement agreement, without objection by the Special Fund, and set the issue of Special Fund liability for a hearing. The employer moved to be realigned as a plaintiff in claimant's case against the Special Fund and to be subrogated to the interests of the claimant against the Special Fund, pursuant to the terms of the settlement agreement. The Special Fund's motion to dismiss, based on arguments that the settlement had been approved by the "old" Board and that the employer was not authorized to proceed against the Special Fund for apportionment of the settlement award, was overruled.

The Administrative Law Judge (ALJ) who heard the proof awarded claimant a 60% permanent, partial, occupational disability, with the entire liability falling upon the Special Fund. Pursuant to the settlement agreement between claimant and the employer, the Special Fund was ordered to reimburse the employer for 425 weeks in an amount that equalled a 60% occupational disability award. Subsequently, however, the ALJ sustained the Special Fund's petition for reconsideration, ruling that the employer could not be reimbursed by the Special Fund for the sums it had paid. Claimant obtained counsel and, pursuant to his petition for rehearing, the ALJ amended his prior order and ordered the Special Fund to pay claimant for an 8.6% occupational disability, the difference between the 60% figure and the 51.4% claimant had received from the employer under the terms of the settlement.

The employer appealed to the "new" Workers' Compensation Board ("new" Board) seeking reimbursement from the Special Fund as contemplated by the settlement agreement. The Special Fund filed a protective appeal. During the pendency of the appeals, the Special Fund and claimant entered into an agreement for a lump-sum settlement of the remaining 8.6% occupational disability. The Special Fund's subsequent motion to dismiss the claimant as a party to its appeal was sustained, with the "new" Board noting that claimant remained a party to the employer's appeal. The "new" Workers' Compensation Board, in a two to one decision, reversed the ALJ and ruled that fundamental fairness required that the Special Fund reimburse the employer, in weekly payments, for the 51.4% disability represented by the settlement.

Board Member Miller dissented, reasoning that the settlement with the employer was for the employer's liability only. Any liability of the Special Fund was a separate claim. To require Special Fund reimbursement to the employer amounted to a partial assignment to the employer of claimant's recovery against the Special Fund which is specifically prohibited by KRS 342.180. Likewise, sub-

rogation is authorized by KRS 342.700 only when the worker has a cause of action against a third-party tortfeasor. In compensation claims, the Special Fund is no such third party. The employer was likened to an alleged tortfeasor who settles with the injured party and is subsequently found to have no liability. He is not entitled to reimbursement of his bad bargain. *See, Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970). Board member Miller concluded that the employer here was merely a volunteer, entitled to neither contribution, indemnity, nor subrogation.

The Court of Appeals affirmed the decision of the "new" Board, and the instant appeal ensued.

 As was noted in the decisions below, it is settled that an injured worker may reach a lump sum settlement with one defendant and continue to maintain an action against a codefendant for its share of the ultimate liability. *Palmore v. Helton*, Ky., 779 S.W.2d 196 (1989). If the settling defendant agrees to settle for more than his share of the liability, the rule is that he bears the consequences of his poor bargain. There is, however, no rule which requires that one defendant's poor bargain relieves a codefendant, whose liability has been fully litigated, from its obligation to pay the entire amount for which it is adjudged liable. In the instant case, the settling defendant and the claimant agreed that a controversy continued to exist regarding both Special Fund liability and apportionment. They incorporated into their agreement a provision whereby the employer would be reimbursed by the Special Fund if part of the occupational disability for which they settled was determined to be the responsibility of the Special Fund. We find nothing in *Palmore v. Helton, Id.* which precludes a settling defendant and an injured worker from agreeing to the maximum occupational disability for which that defendant may be liable or from incorporating into their agreement a reimbursement provision, such as is present in the instant case, in the event that part of that occupational disability is apportioned to the Special Fund by the ALJ. Since 1982, KRS 342.120 has provided for Special Fund payment directly to the injured worker. It does not address whether a worker may agree that his employer will be reimbursed for sums which the employer paid to the worker but which were later determined to be the responsibility of the Special Fund.

 We note that the primary purpose of the Workers' Compensation Act is to provide for the timely payment of income benefits to injured workers and that the policy of encouraging settlements in compensation cases is one path to achieving that end. KRS 342.180 states as follows:

> No *claim* for compensation under this chapter shall be assignable; and all compensation and claims therefor shall be exempt from all claims of creditors. (Emphasis added.)

The purpose of KRS 342.180 and similar statutes which prohibit the assignment of compensation claims is to protect the injured worker and to promote the purpose of the Workers' Compensation Act by insuring that compensation benefits are available to meet the present and future requirements for food, clothing, and shelter of the worker and his dependents, rather than being available to his creditors to satisfy antecedent debts. 100 C.J.S. § 387. Courts have recognized, however, that it would be counterproductive to extend construction of a statute prohibiting the assignment of compensation claims beyond the purpose for which it was enacted. Accordingly, in certain instances, the assignment of some of the benefits paid subsequent to the litigation of a compensation claim has been permitted. In keeping with the underlying purpose of nonassignment provisions and workers' compensation acts, courts in other jurisdictions have ruled that an employer and a worker may, without violating a statute prohibiting the assignment of benefits, contract in good faith, pending adjustment of a claim, for an advancement of benefits by the employer which will later be deducted from the ultimate award of benefits. *See Gregg v. New Careyville Coal Co.*, 161 Tenn. 350, 31 S.W.2d 693 (1930). Similarly, agreements whereby the employer would continue to pay the injured worker's salary during a period of compensable disability, with the provision that such payments would

be refunded by the worker from his subsequent compensation award, have been upheld as not violating a statute which prohibits the assignment of a compensation claim. *See Dean v. Safety Casualty Co.,* Tex.Civ.App., 190 S.W.2d 750 (1945).

We believe that, in the instant case, the reimbursement provision, which operated as an assignment of a portion of the benefits received pursuant to the worker's subsequent compensation award against the Special Fund, does not violate either the purpose or the language of KRS 342.180 and is in accord with the purposes of the Workers' Compensation Act. KRS 342.180 prohibits the assignment of a workers' compensation claim. The agreement herein did not contemplate an assignment of the worker's claim against the Special Fund to the employer, but rather an assignment of whatever portion of the worker's recovery had been paid by the employer but was determined by the ALJ to be the responsibility of the Special Fund. The reimbursement to the employer relates to compensation benefits for the present injury and not to satisfaction of a debt which predated the injury.

Contrary to the Special Fund's argument, this arrangement will not result in the Special Fund reimbursing the employer for medical expenses for which it is not liable. The settlement agreement between the claimant and the employer and the reimbursement provision therein had no effect whatever on Special Fund liability as to either the amount of disability or apportionment, both of which were fully litigated before the ALJ. Any risk of the agreement was borne solely by the parties to the agreement and was not unlike the risk inherent in other settlement agreements. The worker bore the risk that he had settled his claim against the employer for a lower percentage of disability than would be determined by litigation, and the employer bore the risk that the percentage of disability for which it settled was greater than that which would be determined by litigation. The worker waived his right to future medical and rehabilitation benefits, but the agreement also served to put a greater part of his compensation benefits at his disposal in a more timely manner than would otherwise have been the case. Because the

agreement eliminated the employer's risk of paying more than its apportioned share of the 51.4% occupational disability, it was more attractive to the employer to settle the claim. We believe that it is in accord both with KRS 342.180 and with the purpose of the Workers' Compensation Act to require the Special Fund to compensate the worker directly for an 8.6% occupational disability, as has already been done, and to reimburse the employer, in periodic payments, for the 51.4% occupational disability which it has paid pursuant to the terms of the settlement agreement. Furthermore, we do not believe that this scheme violates the payment provisions of KRS 342.120.

Accordingly, the decision of the Court of Appeals is hereby affirmed, and the case is remanded to the ALJ for the entry of an award and order that are consistent with this opinion.

All concur.