2011 VT 20

**David YUSTIN v. DEPARTMENT OF PUBLIC SAFETY**

[19 A.3d 611]

No. 09-294

¶ 1. February 23, 2011. Claimant in this workers' compensation proceeding contends the Commissioner of Labor erred in ruling that his employer, the Vermont Department of Public Safety (DPS), may offset the sick wages paid to claimant during a period of temporary total disability against the workers' compensation disability benefits it was ordered to pay for the same period. We affirm.

¶ 2. The material facts are undisputed. Claimant was employed as a Vermont State Trooper on June 12, 2006, when he suffered a shoulder injury while exercising in preparation for a physical fitness exam. Claimant continued to work until January 2007, when he underwent shoulder surgery for a partial rotator-cuff tear, and was out of work until May 2007. The Risk Management Division, the state agency that handles workers' compensation claims by state employees, disputed whether the injury was work-related and denied coverage. Claimant used accumulated employer-funded sick leave to receive full wages during the period that he was out of work and challenged the denial of workers' compensation. Following an informal conference in January 2008, the Labor Department hearing officer issued an interim finding that the injury was work related and ordered payment of temporary total disability benefits to claimant for the period that he was out of work, totaling about $16,500, as well as related medical benefits. See 21 V.S.A. § 662(b) (authorizing commissioner to order interim payment of compensation, pending a final determination and subject to repayment, when the parties are not in agreement).

¶ 3. DPS did not contest the interim order and, pursuant to a provision in the State of Vermont Personnel Policy and Procedures Manual, restored claimant's sick leave by the amount of disability benefits owed. The personnel policy in question, Policy 13.9, states:

> Days lost during the pay period of injury should be coded on time reports as sick leave. Employees who do not have enough sick leave accrued to cover their lost time may report lost days as annual leave, if they have any accumulated. Any sick or annual leave used for this injury will be reimbursed to the employee if the claim is approved for Workers' Compensation indemnity, subject to the waiting periods outlined above.

¶ 4. Claimant challenged this method of payment, asserting that he was entitled to a separate and direct payment of compensation benefits from which he could pay his attorney's fees, rather than a reimbursement of sick leave. Following a second informal conference, the Department

hearing officer upheld the payment method, finding that claimant had effectively been paid his benefits and "made whole" through the reimbursement of his sick time, and that the attorney could seek fees from claimant. The Commissioner upheld the ruling, concluding that it was "implicit" in Policy 13.9 "that the employee cannot recoup the leave time he or she took without also repaying the leave wages he or she received; otherwise, he or she would be receiving compensation above and beyond what the parties had contracted for in their employment agreement." Under the policy, the Commissioner reasoned, "the wages paid are akin to an advancement of workers' compensation benefits, . . . and therefore the offset is both practical and fair." The Commissioner expressly limited her holding to situations where, like the State of Vermont, the employer is self-insured for workers' compensation, so that the leave wages to be offset and the workers' compensation benefits to be paid "derive from the same source."

¶ 5. Claimant appealed directly to this Court pursuant to 21 V.S.A. § 672, and the Commissioner certified the following question for review: "Was it proper for [DPS] to offset the sick leave wages it paid to Claimant during his period of temporary total disability from the workers' compensation benefits it later was ordered to pay for the same period?" As explained below, we conclude that this accounting device did not violate the statute or deprive claimant of any workers' compensation benefits due.

¶ 6. The parties focus on the applicability of the state personnel policy, disputing whether DPS's assent to the interim order constitutes an "approval" of the claim under the policy and whether the set-off authorized by the Commissioner constitutes an impermissible "assignment" of benefits under the Workers' Compensation Act. We conclude, however, that an employer's credit to itself for sick leave

payments paid on account for what was ultimately determined to be a work-related injury, accompanied by a credit to the employee of the sick leave benefits claimed, is entirely consistent with the compensatory purpose of the Act pertinent to claimant's situation. Required by the Act to pay partial wage replacement for time missed from work due to on-the-job injury, 21 V.S.A. § 618, DPS first paid claimant in the form of sick leave which it later replenished upon accepting the Department's interim ruling that the disability was work-related.

¶ 7. Like most states, Vermont's workers' compensation scheme evinces a clear and strong policy against the double recovery of benefits. See, e.g., 21 V.S.A. § 624(e) (requiring reimbursement of amounts paid by employer or insurance carrier from third-party damages collected by employee); *id.* § 643a (requiring that employee repay all benefits to which he or she was not entitled); *Travelers Ins. Co. v. Henry*, 2005 VT 68, ¶ 24, 178 Vt. 287, 882 A.2d 1133 (holding that, if employee recovers economic damages under employer's insurance policy, workers' compensation carrier "is entitled to reimbursement to prevent a double recovery"); *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 589-90, 595 A.2d 264, 266 (1991) (noting that the goal of workers' compensation is to provide injured workers with "expeditious and certain payments" not to permit "double recovery . . . for the same injury").

¶ 8. Unlike many other states, our workers' compensation law does not contain an express provision authorizing a credit or offset against an employee's compensation award for sick leave or other wages paid during the disability period. Yet such provisions are not uncommon and serve the salutary purpose of encouraging continued payment to the employee for the period of time that his or her claim is being considered while preventing a double recovery in the event

that the claim is ultimately allowed. See, e.g., *Freel v. Foster Forbes Glass Co.*, 449 N.E.2d 1148, 1151 (Ind. Ct. App. 1983) (observing that not allowing employer to credit wages paid during temporary disability period under wage-continuation plan pursuant to statute would impermissibly enable claimants to "receive from the employer more money for the period of disability than could have been earned if there had been no injury"); *Gendreau v. Tri-Cmty. Recycling*, 1998 ME 19, ¶ 7, 705 A.2d 1106 (concluding that compensation board's interpretation of "wage continuation" statute to allow offset of sick-leave payments against workers' compensation award was "consistent with the policy of the Act prohibiting double-recoveries"); *Knoll v. Chemung Cnty.*, 845 N.Y.S.2d 477, 478-79 (App. Div. 2007) (upholding procedure under advance-payments statute in which workers' compensation award was credited to employer as "reimbursement" for sick leave benefits previously paid and subsequently restored but reversing for recalculation of the restored benefits to avoid possible "windfall" to claimant); *Donegal Sch. Dist. v. Workers' Comp. Appeal Bd.*, 798 A.2d 857, 861 (Pa. Commw. Ct. 2002) (concluding that, where sick leave benefits paid during disability period were restored, denying employer credit against workers' compensation award would result in impermissible "windfall to [c]laimant").

¶ 9. While Vermont's workers' compensation law may not contain a similar provision, it does clearly spell out the employer's affirmative duty to a work-injured employee: "the employer . . . shall pay compensation in the amounts . . . specified" by the statutory schedule of disability and death benefits. 21 V.S.A. § 618(a)(1); see 21 V.S.A. § 642 (limiting, generally, temporary total disability benefits to two-thirds of the employee's average weekly wages). Here, claimant utilized his employer-funded sick leave until the employer acceded to the Commissioner's order, and the employer thereafter reimbursed his sick leave account by the amount of disability benefits due. Accordingly, the employer fulfilled its express statutory obligation by first paying full wage compensation in the form of sick leave benefits and, after the Department's interim ruling that the claim was compensable, by later paying temporary disability benefits as ordered. Claimant was held harmless from any loss to his accumulated sick leave by the employer's reimbursement to that account as called for in the personnel policy.

¶ 10. Echoing claimant, the dissent complains that sick leave reimbursement by the employer fails to satisfy the statutory obligation to pay "to the person" the amounts specified by the Commissioner. 21 V.S.A. § 618(a)(1). The dissent ignores, as does claimant, that by paying the sick leave benefits the employer *already* paid that portion of compensation specified by the Commissioner "to the person" of claimant. There is no dispute that claimant received full and direct payment of wage replacement from the employer during the disability period. Having paid the compensation ultimately required by statute and by the Commissioner, the employer. need only replenish the sick leave to return claimant to his status quo ante on that account. The workers' compensation statute bothers not over what account the money comes from, so long as it comes from the employer. Claimant's theory to acquire two payments for the same injury runs not only contrary to established policy against double recovery, but would have the employer do more than what the statute demands. Whatever the dissent's inclination to have the employer pay twice, it cannot point to a violation of the statute when, as here, the employer has paid once.

¶ 11. Claimant contends, nevertheless, that the employer's credit must be disallowed but offers no authority in the first

instance obligating DPS to pay him more wage replacement in addition to that already paid in sick leave at the employer's expense. The argument fails. While the Act, to be sure, may omit an express set-off clause, nowhere does it compel employers to pay twice for the same lost time due to work injury or prohibit a credit for payments made by employers for what are later deemed compensable injuries. Indeed, as noted, such a double recovery is patently inconsistent with the Act. The employer here paid for, and claimant received, all statutory disability benefits to which he was entitled under § 618. Accordingly, we discern no grounds to reverse the Commissioner's ruling.[1]

¶ 12. Claimant also relies on the Act's general prohibition against assignment of benefits to creditors under 21 V.S.A. § 681 (generally exempting workers' compensation benefits "from all claims of creditors" and declaring that "[c]laims for compensation under the provisions of this chapter shall not be assignable"). The § 681 ban against assignment is inapposite, since no assignment was made by or required from claimant. The policy merely authorizes workers, entirely at their election, to draw a substitute payment from the employer in advance of any workers' compensation benefits due, and sets off that amount against any balance owing.

---

[1] The dissent dismisses the restoration of claimant's sick leave as "an empty gesture" because such benefits are not paid when an employee leaves state employment. *Post*, ¶ 25. This is beside the point. The salient fact is that claimant received full wages during the disability period and lost nothing in the way of sick or annual leave. Claimant's real complaint is that he did not receive a lump sum payment, but the workers' compensation statute does not entitle him to payment in that form.

¶ 13. As other courts have recognized, nothing in this procedure violates the text or purpose of the anti-assignment statute. See *Newberg v. Sarcione*, 865 S.W.2d 317, 319 (Ky. 1993) (noting that purpose of nonassignment statute is to ensure that compensation benefits are available to meet needs of worker and his or her dependents, and is not violated where "an advancement of benefits by the employer" is made pending adjustment of claim and later "deducted from the ultimate award of benefits"); *Caddie Homes, Inc. v. Falic*, 235 A.2d 437, 441 (Pa. Super. Ct. 1967) ("[M]any other states have recognized that, despite a statutory non-assignability clause, agreements which provide that an employer who advances money to an employee will be repaid out of compensation benefits are enforceable . . . because the employee is, as a practical matter, being advanced the amount of his compensation . . . and is thus receiving the full benefit of it." (quotation omitted)). Again, we find no basis to disturb the Commissioner's decision.

¶ 14. Finally, although the employer's sick leave credit against workers' compensation results in no diminution of wages and benefits, claimant asserts that the procedure was not "cost neutral" because he had to retain an attorney to pursue his claim, incurring legal fees which otherwise could have been paid from a lump-sum compensation award. Claimant's argument overlooks his clear statutory right to seek from the Commissioner a reimbursement of reasonable attorney's fees incurred in pursuing his claim, a right that applies even where — as here — the attorney's fees are incurred prior to final hearing. See 21 V.S.A. § 678(d) (authorizing an award of attorney fees incurred to secure payment of benefits in settlement after denial but before formal hearing). Thus, we are not persuaded that the employer's offset-credit policy in this case compromised in any way claimant's opportunity to seek

attorney's fee reimbursement under the statute.[2]

*Affirmed.*

¶ 15. **Dooley, J.,** dissenting. This may look on the surface like a dispute over the application of rules and statutes, but it all starts with a letter from the Department of Public Safety (DPS) to claimant that can be paraphrased roughly as follows:

> The Department of Labor ordered us to pay you temporary total disability workers' compensation benefits for the period January 8, 2007 through May 7, 2007. However, as your employer, we paid you sick leave for that period, and the value of the sick leave exceeds the amount of temporary total disability benefits. Therefore, at our option, we will recredit you the sick leave and not pay you any disability benefits as ordered. We can do this without your approval.

I use this hypothetical letter to demonstrate what is really going on in this case. DPS is violating the Department of Labor's specific order to pay benefits to claimant; an order that was required by 21 V.S.A. § 662(b) (stating that when denial is made without a reasonable basis "the commissioner shall order that payments be made").[3] None of the rules and statutes cited by the majority changes the reality that DPS's failure to pay is directly in violation of the Workers' Compensation Act (Act). At best they provide a fig leaf for DPS's policy argument, accepted by the majority, that its actions are fair and necessary to prevent a double recovery. Even that proposition is arguable, as I discuss below, but in the face of the specific command of § 662(b), these are policy arguments for the Legislature, not this Court.

¶ 16. In general, the Legislature cannot contemplate every possible way a statute will be applied and provide in detail an answer for every occasion. As a result, we are sometimes put in the position where application of a statute appears to lead to a result that we would rather not reach. Despite our views, we must apply the

---

[2] The dissent asserts that the right to seek attorney's fees is "illusory" based on certain workers' compensation rules limiting the circumstances where fees will be awarded for informal hearings. *Post,* ¶ 27. One of those circumstances, however, is where benefits were denied "without [a] reasonable basis." Workers' Compensation and Occupational Disease Rules, Rule 10.0000(a)(3)(ii), 3 Code of Vt. Rules 24 010 003-6, available at http://www.michie.com/vermont. The record here shows that claimant was awarded benefits based on unequivocal findings by the workers' compensation hearing officer that — despite employer's assertions to the contrary — claimant was "clearly" required to maintain a minimum level of fitness to perform the duties of his job; that it was "clear that the injury occurred on the employer's premises"; and that claimant was therefore plainly entitled to temporary total disability benefits. Thus, claimant was afforded a reasonable opportunity, had he applied, to secure his attorney's fees. Recovery of fees may not be guaranteed, but it is not illusory. Of course, claimant cannot recover what he does not seek.

[3] In an effort to make legislative silence support its position, the majority faults claimant for offering "no authority in the first instance obligating DPS to pay him more wage replacement in addition to that already paid in sick leave at the employer's expense." *Ante,* ¶ 11. The authority is, of course, the direct order to pay the workers' compensation benefits and 21 V.S.A. § 662(b), which requires such an order.

statute as the Legislature wrote it and not how we wish they had written it. That responsibility applies as well to the Executive branch. It particularly applies when one agency of state government is required by law to regulate activities of another agency but decides it will not follow a specific statutory mandate in doing so.

¶ 17. We have long held that "the right given to an employee under the provisions of our Workmen's Compensation Act ... is a right created by statute and is not a right existing at common law." *Grenier v. Alta Crest Farms, Inc.*, 115 Vt. 324, 330, 58 A.2d 884, 888 (1948). The statute "provides a specific and exclusive remedy for the enforcement of that right," and the "right is limited and can be enforced only by following the procedure given by the statute which created such right." *Id.* Thus, because workers' compensation is governed by statute, equitable considerations cannot be used to override the statutory obligations. *Butson v. Dep't of Emp't & Training*, 2006 VT 10, ¶ 3, 179 Vt. 599, 892 A.2d 255 (mem.). Ignoring these precepts, and based on considerations of fairness and ease, the majority has substituted its own reasoning for the process accorded under the statute. However rational, the majority's solution is inappropriate because, as we have explained, "in an area of law created entirely through statutory enactment, [this Court should be] hesitant to create rights where the Legislature chose not to do so.". *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 49, 178 Vt. 244, 882 A.2d 1177.

¶ 18. The statutory language does not address this issue. According to the majority, "the employer fulfilled its express statutory obligation by first paying full wage compensation in the form of sick leave benefits and, after the Department's interim ruling that the claim was compensable, by later paying temporary disability benefits as ordered." *Ante*, ¶ 9. In so concluding, the majority quotes only

part of the relevant statutory section; the full language is as follows: "the employer or the insurance carrier shall pay compensation in the amounts *and to the person* hereinafter specified." 21 V.S.A. § 618(a)(1) (emphasis added). Thus, the statute directs not just that payment should be furnished, but that it should be furnished to a particular person. Here, that person was claimant, not DPS. The majority asserts that "employer *already paid*" claimant in the form of sick leave and so there was no need to abide by this portion of the statute. *Ante*, ¶ 10. That conclusion depends on the assumption that DPS had authority to substitute sick leave reimbursement for payment of a workers' compensation award. The statutory language, however, contains no such provision. There was simply no authority under the statute for DPS to use the benefit award to, in effect, pay itself instead of employee.

¶ 19. As DPS notes, other states have enacted statutory provisions to allow an employer to receive credit for wages paid prior to a determination of workers' compensation benefits. See, e.g., *Freel v. Foster Forbes Glass Co.*, 449 N.E.2d 1148, 1150-51 (Ind. Ct. App. 1983) (concluding that employer entitled to credit for payments made under wage-continuation plan pursuant to statute allowing such deduction); *Knoll v. Chemung Cnty.*, 845 N.Y.S.2d 477, 478 (App. Div. 2007) (noting that pursuant to statute employer is entitled to reimbursement of advancement of wages made to employee). Vermont's workers' compensation law has no similar recoupment provision. Therefore, these cases relying on other states' statutory provisions are not on point. They cannot create a right that is not afforded under our Act.

¶ 20. With no statutory basis for its action, DPS relies on an internal personnel policy provision. The policy is a six-page memorandum about workers' compensation, and the relevant section is

entitled "Absence Greater than Three (3) Work Days." The particular language relied on by the Department provides:

> Days lost during the pay period of injury should be coded on time reports as sick leave. Employees who do not have enough sick leave accrued to cover their lost time may report lost days as annual leave, if they have any accumulated. Any sick or annual leave used for this injury will be reimbursed to the employee if the claim is approved for Workers' Compensation indemnity, subject to the waiting periods outlined above.
>
> . . . .
>
> . . . Once the injury is approved as compensable by the Risk Management Workers' Compensation Division, beginning with the fourth day of injury the employee's time off should be reported on the time report as leave with no pay, Workers' Compensation.

The policy nowhere mentions the issue in this appeal — whether DPS can fail to pay claimant workers' compensation benefits as ordered by the Department of Labor. At best, the discussion of reimbursing sick leave *assumes* that an agency can keep the workers' compensation benefits it has been ordered to pay. It is not a source of law for the right to keep the benefits.

¶ 21. Even if the personnel policy addressed the issue before us, we could not rely upon it on the record we have. "Leave compensation and related matters" and "[r]ules and regulations for personnel administration," are subjects that must be collectively bargained. 3 V.S.A. § 904(a)(5), (9). There is no evidence that the policy provisions quoted above were agreed to in collective bar-

gaining. Indeed, the policy appears to be a unilateral one adopted by the Vermont Agency of Administration and is not part of the collective bargaining agreement. Our law does provide that "past practices may give rise to an implied contractual provision in the collective-bargaining context." *In re Cole*, 2008 VT 58, ¶ 17, 184 Vt. 64, 954 A.2d 1307. To demonstrate such, however, it must be shown that the parties' conduct has "a continuity, interest, purpose and understanding which elevates a course of action to an implied contractual status." *Id.* ¶ 13 (quotation omitted). Because it seeks to rely on the personnel policy, DPS has the burden of demonstrating that the personnel policy provision is a past consistent practice that has reached the level of an implied contractual provision. It has not even tried to meet that standard.

¶ 22. Thus, the majority decision is supported only by policy arguments. Its main argument for the right to even consider policy arguments is its conclusion that an offset is most consistent with the overall policy inherent in the Act, which discourages double recovery. The majority asserts that the Act "evinces a clear and strong policy against the double recovery of benefits." *Ante*, ¶ 7. In support of this policy, the majority cites two statutory provisions and two cases. See 21 V.S.A. §§ 624(e), 643a. The statutes that the majority cites are prime examples of why it is inappropriate for us to rely on policy arguments to decide this case. The statutes show that the Legislature has been concerned about double recovery and acted on that concern where it concluded that action was warranted. It has not concluded that action is warranted in the circumstances before us. We are improperly acting as the Legislature in deciding that some kind of recoupment must be imposed in this circumstance.

¶ 23. The Vermont cases cited by the majority also support the opposite conclusion from that reached by the majority.

They involve implementation of statutory provisions specifically addressing reimbursement of benefits and support reimbursement only where statutorily authorized. See *Travelers Ins. Co. v. Henry*, 2005 VT 68, ¶ 24, 178 Vt. 287, 882 A.2d 1133 (construing 21 V.S.A. § 624(e), which addresses reimbursement of workers' compensation carrier for award resulting from third-party liability); *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 589-90, 595 A.2d 264, 266 (1991) (same).

¶ 24. Although I do not believe that the policy arguments can control our decision, I take issue with the majority that the right policy answer is so obvious. First, because DPS is manipulating sick leave, this subject is an appropriate one for collective bargaining. As stated above, the statute obligates the state to bargain "[l]eave compensation and related matters." 3 V.S.A. § 904(a)(5). DPS's reliance on a personnel policy shows that this subject should be bargained between the parties and not unilaterally imposed by the state.

¶ 25. Second, DPS is conditioning the receipt of an earned entitlement on foregoing a statutory right to workers' compensation. Under the current collective bargaining contract, sick leave is earned under a formula that depends upon time in employment, but it is not compensated when an employee leaves state employment. See Collective Bargaining Agreement Between the State of Vermont and the Vermont State Employees' Ass'n State Police Bargaining Unit for July 1, 2008 through June 30, 2010, Art. 26, § 2(a)(1), (4), at http://www.vsea.org/state-police-unit-contract. Thus, for the vast majority of state workers, who have not used up sick leave, restoration of sick leave benefits is an empty gesture because a bank of sick leave is not a fungible resource to the employee. The State is claiming to give up something of value that in most cases has no value. It is at least arguable that the sick leave and the workers' compensation benefits should be viewed as collateral to each other in a circumstance where neither fully compensates the employee for the consequences of the employee's injury. See *Nat'l Labor Relations Bd. v. Gullett Gin Co.*, 340 U.S. 361, 364 (1951) (affirming NLRB decision refusing to deduct state unemployment compensation benefits from back pay awards to discriminatorily discharged employees because the two benefits were "collateral").

¶ 26. Finally, this case is a vivid demonstration of what happens when we try to assume the prerogative of the Legislature in a complicated statutory scheme. Claimant has argued that he is not made whole because he has no way to pay his attorney's fees and the State gets the benefit of the workers' compensation award without contributing toward the cost of obtaining it. The majority answers that claimant has a right to seek statutory attorney's fees under 21 V.S.A. § 678(d).

¶ 27. Again, we are dealing with an illusory right of little or no value. The benefits in issue were obtained through an informal process authorized by 21 V.S.A. § 662(b). The Commissioner of Labor has created an attorney's fees rule directly on point. It provides that "[i]n most instances awards will only be considered in proceedings involving formal hearing resolution procedures." Workers' Compensation and Occupational Disease Rules, Rule 10.0000(a)(3), 3 Code of Vt. Rules 24 010 003-6, available at http://www.michie.com/vermont. It goes on to state three exceptions to this limitation: where the employer (1) "is responsible for undue delay"; (2) denies the claim "without reasonable basis"; or (3) "engaged in misconduct or neglect." *Id.* There is no indication that any of these exceptions apply here so the normal policy of denying fees for informal proceedings controls. To ensure the attorney was paid for his labor, he entered into a contingent fee arrangement under which he was entitled

to a percentage of any recovery. DPS took the money from which the attorney was to be paid without compensating the attorney for his labor. Of course, the policy on an attorney's entitlement for fees could be changed by the Legislature, or even possibly by rule of the Department of Labor, in connection with a statutory authorization for the procedure DPS employed in this case. It cannot be done by this Court, and the attorney is left without' compensation by the ruling of this Court. Thus, in the future, no attorney would take a case against the State involving temporary benefits because there is a significant chance the attorney will not be paid for the work that produces the benefits.

¶ 28. We should resist here the temptation to judicially legislate and apply the law as it is. I respectfully dissent.

¶ 29. I am authorized to state that Justice Johnson joins in this dissent.

Motion for reargument denied as untimely filed March 17, 2011.