Eaton, J.
¶ 1. Employer Entergy Corporation challenges the denial of its request for a credit against future workers’ compensation benefits owed to claimant Sharon Conant. Employer asserts that, given the payments it made to claimant under the terms of a collective bargaining agreement, as well as the retroactive temporary total disability (TTD) payments it was ordered to make, claimant has received more money as wage replacement than she was owed. We agree. We therefore reverse the Commissioner of the Department of Labor’s decision on this point, and remand for a determination of the amount to be offset from claimant’s future workers’ compensation benefits.
¶ 2. The material facts are undisputed. In early February 2014, claimant injured her ankle in employer’s parking lot. She reported her injury to employer, who, in turn, submitted an injury report *392 to its workers’ compensation insurer, AIG. Under its compensation policy with AIG, employer must reimburse AIG for all workers’ compensation benefits paid, with a limit of $1,000,000 per claim. Employer is thus essentially self-insured for virtually all compensation claims; the primary benefit of its policy is the administration and defense of claims.
¶ 3. Claimant here had access to two forms of payment following her injury. Under the Workers’ Compensation Act (Act), when an employee is injured on the job and becomes unable to work, an employer must pay “a weekly compensation equal to two-thirds of the employee’s average weekly wages, but not more than the maximum nor less than the minimum weekly compensation.” 21 V.S.A. § 642 (also providing that injured employee is entitled to $10 per week for each dependent child who is unmarried and under age twenty-one); see also id. § 618(a)(1) (stating that compensation is due when worker “receives a personal injury by accident arising out of and in the course of employment”). The statute provides that “in no event shall an employee’s total weekly wage replacement benefits, including any payments for a dependent child, exceed 90 percent of the employee’s average weekly wage prior to applying any applicable cost of living adjustment.” 21 V.S.A. § 642.
¶ 4. Employer and claimant were also subject to the terms of a collective bargaining agreement (CBA). The CBA provided compensation in differing amounts for occupational and nonoccupational disabilities. An occupational disability is defined as “a physical or mental handicap” that “occurred while the employee was doing his/her job and prevents the employee from performing his/her job.” The CBA specifically provides for an offset for workers’ compensation benefits for occupational disabilities. It states:
Subject to completion of Workers’ Compensation forms and procedures, normal wages will be paid to the employee for the first work week of an occupational disability.
After the first week of occupational injury has been paid, subject to the approval of the employee’s department Supervisor/Manager and the Human Resources Department, full normal wages will be paid:
• less Workers’ Compensation benefits.
*393 • for whichever occurs first:
i. a period equaling two weeks for each completed year of continuous service dating from the employee’s original employment by either the Company or a present or former affiliated company; or
ii. for the length of the occupational disability.
• Workers’ Compensation benefits will be paid after the period described above.
¶ 5. The CBA defines a nonoccupational disability as “a physical or mental handicap that does not occur on the job and is for longer than five (5) consecutive days and prevents the employee from performing his/her job.” The CBA provided three stages of benefits for nonoccupational disabilities: (1) continued full salary for five days or until accrued “continuance of full salary days” are exhausted, whichever is longer, followed by (2) a short-term disability benefit equal to 60 percent of the employee’s weekly salary for up to twelve months, and then (3) a long-term disability benefit.
¶ 6. The CBA makes plain the parties’ intent that payments for occupational injuries are offset by workers’ compensation payments. See In re VSEA, 2014 VT 56, ¶ 23, 196 Vt. 557, 99 A.3d 1025 (“Our goal in construing a contract is to determine the intention of the parties and implement it.”). The CBA is also very clear concerning its overall application. A worker injured on the job will receive, subject to the terms of the Act and the CBA, 100% of his or her wages through a combination of benefits from both sources. Workers’ compensation provides 66.66% in wage replacement pursuant to 21 V.S.A. § 642, and the CBA provides additional wage replacement to bring the injured worker to 100% of his or her wages. In other words, the CBA fills the gap in wage replacement benefits that would ordinarily exist between a worker’s average weekly wages and the TTD payments under the Act, which are 66.66% of average weekly wages. For workers injured in nonoccupational incidents, the CBA provides 60% wage replacement, while there will be no wage replacement under the Act.
¶ 7. Because AIG denied claimant’s request for workers’ compensation benefits, employer began paying claimant salary con *394 tinuance and short-term disability benefits pursuant to the nonoccupational disability provision in the CBA. Employer ultimately paid claimant $24,927.75 in accrued continuance of full salary days and short-term disability benefits under the CBA covering the pay periods from March 9, 2014 through August 23, 2014. Unlike workers’ compensation benefits, these payments were subject to taxes. After taxes and other deductions, claimant received a net payout of $14,524.16.
¶ 8. Meanwhile, in June 2014, claimant requested a hearing on the denial of her claim for workers’ compensation benefits, arguing that this was an occupational (work-related) rather than a nonoccupational injury. A Department of Labor (DOL) workers’ compensation specialist found the denial of workers’ compensation benefits not reasonably supported and issued an interim order directing employer/AIG to pay claimant TTD benefits retroactive to March 7, 2014, the date on which claimant began losing time from work as a consequence of her injury. See Wood v. Fletcher Allen Health Care, 169 Vt. 419, 423, 739 A.2d 1201, 1205 (1999) (explaining that TTD benefits are awarded “during the worker’s recuperation period until the worker is restored as much as possible to functionality,” and such “benefits are provided as a partial substitute for wages lost during the recuperation period”). The interim order indicated that, pursuant to statute, the failure to pay as directed within twenty-one days could result in additional amounts and/or interest owed to claimant, as well as administrative penalties.
¶ 9. Employer immediately sought a stay of this order pending a determination of whether it actually owed any TTD payments given the short-term disability benefits that claimant had already received to replace lost earnings during the period in question. While the stay request was pending and as the twenty-first day approached, employer/AIG paid claimant $34,980, which represented thirty weeks of retroactive TTD benefits dating back to March 7, 2014, at a weekly compensation rate of $1166. The DOL specialist then denied the stay request as moot. As a result, claimant received more in combined compensation and CBA wage replacement benefits than she would have received had the injury been deemed either occupational or nonoccupational from the outset.
¶ 10. Employer subsequently moved for summary judgment on the overpayment issue. With one exception, the Commissioner *395 denied its request. The Commissioner recognized that the Act evinced a strong policy against double recovery. She found that 21 V.S.A. §§ 651 and 693, read together, prohibit a claimant from being paid twice for the same benefit — once from the employer and once from its insurance carrier. Thus, she stated, if a claimant has already received a wage replacement benefit from one entity and subsequently receives payment of the same benefit from the other, the latter payment becomes under § 651, one “which, by the provisions of this chapter, [was] not due and payable when made,” and thereby subject to an offset, in the Commissioner’s discretion, against any benefits still owed. Nonetheless, while 21 V.S.A. § 651 clearly allowed for an offset in situations where a claimant receives payments that ultimately are deemed not to have been owed, the statute made no provision for reimbursement. Given this, the Commissioner concluded that reimbursement was not an available remedy. It is worth noting that the only reason that this became a question of reimbursement as opposed to an offset was due to the lack of a timely ruling on employer’s motion to stay.
¶ 11. In any event, citing Yustin v. Department of Public Safety, the Commissioner allowed employer/AIG to offset any TTD benefits that it paid for weeks during which claimant also received payment from employer for her accrued continuance of full salary days. 2011 VT 20, 189 Vt. 618, 19 A.3d 611 (mem.). These payments were made to claimant under the nonoccupational injury provision of the CBA. This offset applied against any future workers’ compensation indemnity payments.
¶ 12. The Commissioner was unwilling, however, to extend the offset to include the short-term disability benefits that employer paid. She based this decision on the fact that the CBA excused employer from making any wage or salary payments, for either occupational or nonoccupational disabilities, in cases where the employee’s disability resulted from a safety violation about which an employee had been warned, or when the employee was working concurrently for another employer. While neither contingency was asserted to have any relevance to claimant’s injury, the Commissioner determined that these contingencies raised issues foreign to the workers’ compensation scheme. “When they arise,” the Commissioner stated, “these issues are best resolved in the context of the agreement’s grievance and dispute resolution system, not in the context of a workers’ compensation proceeding.” How the threat of these “foreign contingencies” has any bearing *396 on the issues between the employer and employee concerning this claim was not explained. Similarly unexplained was why this rationale did not extend to the accrued continuance of full salary days to which these “contingencies” likewise applied.
¶ 13. The Commissioner’s decision regarding the short-term disability benefits is erroneous. See Wood, 169 Vt. at 422, 739 A.2d at 1204 (“The Commissioner’s decision is presumed valid, to be overturned only if there is a clear showing to the contrary.”). The Commissioner allowed for some offset of the benefits paid under the CBA, but disallowed others because of “contingencies” in the CBA that have no relevance here. There is no dispute that employer paid claimant short-term disability benefits under the CBA, and that the contingencies did not arise. Through these payments and the TTD payments, claimant received two forms of wage replacement from her employer for the same injury, resulting in receipt of wage replacement greater than 100% of her wages. In other words, claimant received more in wage replacement by not working than she would have had she either not been injured at all and continued to work, or if her injury was clearly work-related from the outset. This result is inconsistent with Yustin, the workers’ compensation laws, and public policy.
¶ 14. In Yustin, we held that an employer could offset the sick wages that it paid to a claimant during a period of temporary total disability against workers’ compensation benefits that it was ordered to pay for the same period. 2011 VT 20, ¶ 5. Our decision rested on the “clear and strong policy against the double recovery of benefits” underlying the Act. Id. ¶ 7. We found it immaterial that Vermont law did not contain an express provision allowing for a setoff of the benefits in question. We recognized that statutory setoffs “serve the salutary purpose of encouraging continued payment to the employee for the period of time that his or her claim is being considered while preventing a double recovery in the event that the claim is ultimately allowed.” Id. ¶ 8 (citing cases). Even without a statutory setoff clause, however, we found nothing in the Act that would “compel employers to pay twice for the same lost time due to work injury or prohibit a credit for payments made by employers for what are later deemed compensable injuries.” Id. ¶ 11.
¶ 15. As we made clear in Yustin, an employer complies with the Act when a claimant “receive[s] full and direct payment of *397 wage replacement from the employer during the disability period.” Id. ¶ 10. “The workers’ compensation statute bothers not over what account the money comes from, so long as it comes from the employer.” Id. We emphasized that the attempt to acquire two payments from an employer for the same injury runs contrary to established policy against double recovery and would have the employer do more than what the statute demands. Id. Thus, we concluded that the employer’s decision to reimburse the claimant’s sick leave “did not violate the statute or deprive [the] claimant of any workers’ compensation benefits due.” Id. ¶ 5.
¶ 16. As in Yustin, employer here provided all of the payments made to claimant: short-term disability benefits under the CBA out of one pocket and workers’ compensation benefits out of the other.[1] Claimant has thus recovered twice from employer for the same period of injury. By refusing to allow an offset, the Commissioner required employer to pay more than claimant’s weekly salary and prohibited employer from obtaining a credit for overpayments made for what was later deemed a compensable injury. This directly contravenes our holding in Yustin and the strong policy against double recovery found in the Act. Id. ¶¶ 7, 11.
¶ 17. Vermont’s Workers’ Compensation Act clearly provides for an offset in this situation. 21 V.S.A. § 651 provides:
Payments made by an employer or his or her insurer to an injured worker during the period of his or her disability, or to his or her dependents, which, by the provisions of this chapter, were not due and payable when made, may, subject to the approval of the commissioner, be deducted from the amount to be paid as compensation.
Employer, through the CBA, initially paid claimant nonoccupational disability benefits under the CBA, which, standing alone, are higher than the amount payable under the CBA as the result of an occupational injury. Thus, the Commissioner’s determination *398 that the injury was work-related means the amount actually due under the CBA was the difference between the 60% received under the CBA and the 33.33% actually due (with a tax adjustment). The order, issued under the provisions of the compensation chapter, means that portion of the CBA benefits paid above 33.33% were not actually due and payable when made because the injury was, in actuality, occupational.
¶ 18. It was claimant who sought to classify her injury as an occupational one, as was her right. In light of the compensation specialist’s order that the injury was compensable, claimant had received payments under the wrong provision in the CBA, and the payments received were not in fact “due and payable when made” under 21 V.S.A. § 651 to the extent they exceeded weekly wages. If there was no question the injury was occupational the employer would have paid 33.33% under the CBA from the outset. As claimant received workers’ compensation benefits, this clearly became an occupational disability under the CBA, by virtue of the Commissioner’s order, not a nonoccupational one, and a setoff is required. Claimant cannot have it both ways with an occupational injury for workers’ compensation purposes and a nonocupational one for purposes of the CBA. This would place claimant in a more favorable position than someone who sustained a clearly work-related injury.
¶ 19. Certainly it was to claimant’s benefit that upon the initial denial of her request for workers’ compensation benefits, employer immediately began paying her benefits under the nonoccupational disability provision in the CBA. That does not mean, however, that this error cannot be remedied or that employer is somehow obligated to pay claimant more than her actual wages for the period in which she was injured by deciding to contest the compensability of the claim. “It is not a purpose of the Workers’ Compensation Law to allow an employee to profit through the receipt of double benefits.” Matter of Houda, v. Niagara, Frontier Hockey, 792 N.Y.S.2d 651, 653 (App. Div. 2005). If claimant’s initial workers’ compensation claim had been accepted, there would be no question what the short-term disability payment under the CBA would have been, resulting in less payments to the claimant under the CBA than she actually received.
¶ 20. Any other conclusion would contravene public policy. An employee hurt on the job cannot receive wage replacement *399 constituting more than 100% of her weekly wages absent a contractual agreement that expressly so provides. As one court has explained:
If, after having received full wages during the period of his disability, petitioner were permitted to recover, in addition, the amount of the disability payments to which he was entitled, he would be given double payment for a single injury. Under such circumstances, an incapacitated employee performing no services would receive a larger payment than one rendering services. To interpret the statute as permitting such double recovery would not be reasonable. . . . [UJnder the Workmen’s Compensation Laws an injured employee should not receive, in an ordinary case, greater compensation than his wages would have been had he not been injured.
Herrera v. Workmen’s Comp. Appeals Bd., 455 P.2d 425, 428 (Cal. 1969) (quotation and citation omitted).
¶21. Other courts have reached similar conclusions. In Freel v. Foster Forbes Glass Co., 449 N.E.2d 1148 (Ind. Ct. App. 1983), a case we cited in Yastin, the court considered an argument very similar to that presented here: whether an employer could offset the amount of TTD benefits owed against payments made during the same period pursuant to a wage-continuation plan. Under the wage-continuation plan, the employer guaranteed that certain employees would receive their full wages if they were unable to work due to any illness or accident. The plan applied to both occupational and nonoccupational illnesses and accidents, but it was silent regarding the relationship of the wage-continuation benefits to workers’ compensation benefits.
¶ 22. The claimant in Freel was injured on the job and unable to work, and in accordance with its wage-continuation plan, the employer continued to pay the claimant his regular wages. The employer made no actual TTD payments. The claimant sought workers’ compensation benefits, but died during the pendency of the proceedings. A hearing officer determined that the claimant’s dependents were entitled to $6682 in TTD benefits. The employer was credited with the $15,218.04 it had paid as wage-continuation payments, and thus, the claimant’s dependents recovered nothing further from the employer.
¶ 28. The claimant’s dependents appealed, arguing that the state labor board had no jurisdiction to modify the wage-continuation *400 contract to provide that its benefits were reduced by the amount of TTD payments. The court rejected this characterization of the decision below. It found that the issue before the board was not the amount of wage-continuation payments owing under the contract, but rather, the amount of TTD benefits owing to the claimant. The employer had paid the wage-continuation benefit in full as promised, and the effect of those payments on the employer’s duty to pay TTD was properly before the board based on a statute that provided: “Any payments made by the employer to the injured employee during the period of his disability . . . which . . . were not due and payable when made, may, subject to the approval of the industrial board, be deducted from the amount to be paid as compensation.” Id. at 1151 (citation omitted). The court found that, contrary to the claimant’s argument, the fact that wage-continuation payments were due and payable under the contract did not mean that no deduction could be made under the statute. As long as the payments were not due and payable, the board had the discretion to deduct them from the employer’s liability.
¶ 24. In reaching its decision, the court noted the purpose of the Workers’ Compensation Act, and the “strong policy against double recovery.” Id. It emphasized that:
If [the employer] is not given credit for its earlier wage continuation payments, [the claimants] not only will recover twice for the same injury, but will receive from the employer more money for the period of disability than could have been earned if there had been no injury. We do not believe that such a result is consistent with the purposes of the act.
Id.; see also United Toolcraft, Inc. v. Sousley, 147 N.E.2d 558 (Ind. Ct. App. 1958) (holding that where employer paid benefits under group disability policy to employee under mistaken belief that his condition resulted from illness rather than injury arising out of and in course of employment, employee’s acceptance of such benefits did not bar him from benefits to which he was entitled under workers’ compensation law, and employer was properly allowed credit for payments made under disability policy). These same considerations drove our decision in Yustin, and they compel reversal of the Commissioner’s decision here.
*401 ¶ 25. When the correct CBA provision is applied, it can be determined exactly how much money has been overpaid through the combination of benefits. It is no defense here that claimant may have received an overpayment of short-term-disability payments under the CBA rather than an overpayment of workers’ compensation benefits. Because both payments came from employer, employer is entitled to credit the overpayment against future compensation benefits that would otherwise be due pursuant to § 651. While we agree with the Commissioner that § 651 does not provide for reimbursement, it does provide for an offset when the payments were not due and payable when received, as was the case with some of the CBA payments here. The combination of wage replacement benefits received by the claimant is too high, caused solely by the employer dutifully paying the higher nonoccupational disability benefits under the CBA while the compensation claim was denied and paying full temporary benefits to the claimant by Commissioner’s order once the injury was determined to be work-related.
¶ 26. Employer does not need to resort to the grievance process to resolve this question. The “overpayment” here resulted solely from the Commissioner’s order. It is for the Commissioner to determine if claimant has been paid twice for the same benefit — once from the employer and once from its insurance carrier — as well as the extent to which such payments were “not due and payable when made,” and thereby subject to an offset. 21 V.S.A. § 651. The Commissioner here allowed a limited offset but found that she was not empowered to make an additional offset. This was error. Employer here did everything that it could to bring the issue of the potential overpayment to the Commissioner’s attention before it made its TTD payments. Employer should not suffer the consequences of a Hobson’s choice by virtue of the Commissioner failing to make a timely ruling on employer’s request for a stay.
¶ 27. We made clear in Yustin that an employer complies with the Act when a claimant “receive [s] full and direct payment of wage replacement from the employer during the disability period.” 2011 VT 20, ¶ 10. That requirement was satisfied here, and neither the Act nor the CBA provides any grounds for obligating employer to pay more. The Commissioner’s decision must be reversed to allow employer the offset to which it is entitled.
*402 Reversed and remanded for a. determination of the amount of offset that employer is entitled to receive pursuant to 21 IRS.A § 651 by virtue of the overpayment of wage replacement resulting from the Commissioner’s determination that the injury was occupational in nature.

 The employer and its insurer are the same for workers’ compensation purposes. See 21 V.S.A. § 601(3) (defining term “employer,” and stating that if employer is insured, term “includes the employer’s insurer so far as applicable”). Whether employer was “self-insured” or not is beside the point. Under Yustin and 21 V.S.A. § 601(3), both of the payments in question here are coming from employer’s pocket.