Robinson, J.,
¶ 28. dissenting. In deciding that policy concerns support the credit sought by employer in this case, the majority disregards the terms and structure of the workers’ compensation statute, extends the authority of the Commissioner of the Department of Labor to matters well outside of the purview of the workers’ compensation laws, disrupts existing contractual agreements and the ability of employers and disability insurers to enter into contracts for nonoccupational disability coverage, and creates unintended complexities in the calculation of workers’ compensation benefits. This Court’s analysis in Yustin v. Department of Public Safety, 2011 VT 20, 189 Vt. 618, 19 A.3d 611 (mem.), problematic for some of the same reasons, should not be extended so far beyond the specific circumstances that supported the Court’s analysis in that case.
¶ 29. I note at the outset this Court’s standard of review of the Commissioner’s interpretation of workers’ compensation statutes. “While we review questions of law de novo, because ‘the Commissioner has been entrusted by the Legislature with the administration of the workers’ compensation program, we owe substantial deference to her initial interpretation and application’ of the workers’ compensation statutes.” Cyr v. McDermott’s, Inc., 2010 VT 19, ¶ 14, 187 Vt. 392, 996 A.2d 709 (quoting Letourneau v. A.N. Deringer/Wausau Ins. Co., 2008 VT 106, ¶ 8, 184 Vt. 422, 966 A.2d 133). “The Commissioner’s decision is presumed valid, to be overturned only if there is a clear showing to the contrary.” Wood v. Fletcher Allen Health Care, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999); see In re Chatham Woods Holdings, LLC, 2008 VT 70, ¶ 6, 184 Vt. 163, 955 A.2d 1183 (emphasizing deference due to Commissioner as to both findings of fact and interpretations of governing statutes and regulations). For the reasons set forth below, under this standard, the Commissioner’s interpretation of the statute was wholly reasonable and entitled to deference.
I. The Workers’ Compensation Statute
¶ 80. I begin with the workers’ compensation statute, which must be enforced according to its terms. See Gintof v. Husky *403 Injection Molding, 2005 VT 8, ¶ 8, 177 Vt. 638, 868 A.2d 713 (mem.) (explaining that neither this Court nor Commissioner has “ability to expand” rights and benefits provided in statute). In interpreting the workers’ compensation statute, we look first to the plain meaning of the words used by the Legislature. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29, 868 A.2d 729. Because of the law’s remedial nature, “we construe it liberally to allow benefits, unless the law is clear to the contrary.” Id. (quotation omitted).
¶ 81. The workers’ compensation statutes include several provisions relating to repayment of, or a credit against, future workers’ compensation benefits, none of which support the majority’s position in this case. One type of provision provides that when an employer has advanced payments voluntarily or pursuant to the Commissioner’s order, the Commissioner may order repayment of workers’ compensation benefits paid by the employer, or may assess a future credit in favor of the employer against the employee’s future workers’ compensation benefits. In particular, when the Commissioner orders the payment of interim benefits after an employer’s denial, but then ultimately determines that the employee is not entitled to the benefits, the Commissioner may order the employee to repay the benefits to which the employee ultimately was not entitled. 21 V.S.A. § 662(b). The statute specifically provides that this order is enforceable in court. Id.
¶ 82. Similarly, under 21 V.S.A. § 648a, when an employee challenges an employer’s discontinuance of weekly temporary total or temporary partial disability benefits, the employee may seek an extension of benefits for fourteen days. The statute provides that the employer’s payments during this period are without prejudice, and may be deducted from amounts due for permanent partial disability benefits if the Commissioner determines that the discontinuance is warranted or if the Commissioner otherwise orders a deduction. Id. That same statute further empowers the Commissioner to order an employer to continue paying temporary disability benefits after an employer’s notice of discontinuance until a final hearing. Id. If the Commissioner subsequently concludes that the employee was not entitled to any or all benefits paid between the discontinuance and the final decision, the Commissioner may order that the employee repay all benefits to which the employee was not entitled. Id. The Legislature has *404 provided that this order, like an order under § 662(b), is enforceable in court.
¶ 33. Finally, payments voluntarily made by the employer to an employee during the period of disability that were not, when made, due and payable under the workers’ compensation laws may, subject to the Commissioner’s approval, be deducted from the amount to be paid as compensation.[2] 21 V.S.A. § 651. This statute does not purport to require an employee to repay monies paid by an employer outside of the workers’ compensation scheme, but does authorize a future credit within the workers’ compensation framework.
¶ 34. A second type of statute recognizes that both the employer and its insurer are directly liable to injured workers, but acknowledges that payments by one of the two under the workers’ compensation statute are essentially credited to both. Id. § 693 (providing that any compensation paid by the employer or the insurer is “a bar to the recovery against the other of the amount so paid.”).
¶ 35. Finally, the only provision in the workers’ compensation statute that relates to reimbursement of the employer, or workers’ compensation carrier, from proceeds received by an injured worker outside of the workers’ compensation process is 21 V.S.A. § 624. That statute makes it clear that the exclusivity of the workers’ compensation remedy does not prevent an injured worker from enforcing the liability of a third party for the worker’s injuries; establishes a mechanism whereby the employer may, in the name of the injured employee, pursue a claim against a third party; and requires an injured employee who receives damages from a third party for the injury that underlies the workers’ compensation claim to reimburse the employer from those damages for workers’ compensation benefits. Id. That stat *405 ute is limited to recovery from third parties liable for the injury, including first-party insurers liable for such damages, and prescribes specific limitations and requirements on the reimbursement process.
¶ 36. This review of the workers’ compensation statute shows two things, both undermining the majority’s conclusion in this case. First and foremost, nowhere in the workers’ compensation statute has the Legislature authorized the Commissioner to assess a future credit against workers’ compensation benefits on account of, or to order repayment of, disability benefits extended to injured workers by an employer outside of the workers’ compensation process and pursuant to contractual requirements, even if the period of those employment benefits overlaps with the period of workers’ compensation benefits. See Gintof 2005 VT 8, ¶ 7 (“If legislative intent is clear, the statute must be enforced according to its terms without resorting to statutory construction. We will not read benefits into the statute that were not provided by the Legislature.” (quotation omitted)).
¶ 37. Second, the field of reimbursements and future credits has been well plowed by the Legislature. It has not only identified a half dozen circumstances in which a credit against workers’ compensation benefits may be assigned, or in which an injured employee may be ordered to reimburse the employer for benefits extended; it has provided for varying responses in these scenarios — sometimes involving an obligation to repay that is enforceable in court, and sometimes involving a future credit. In the context of payments received by the injured worker outside of the workers’ compensation process, it has established parameters for determining how much is due under what circumstances. The only circumstance in which the Legislature has provided that another payer besides the employer has a responsibility to reimburse the employer or employer’s carrier for compensation paid for a work-related injury is where there is a third-party tortfeasor. Given that the Legislature has dealt extensively with such issues and has authorized the Commissioner to order reimbursement or to assess credits against future benefits in many circumstances, the fact that it has not authorized the Commissioner to impose an offset like that sought by employer here, or to order an injured employee to reimburse contractual benefits paid outside of the workers’ compensation process, suggests an intent that, at least in the absence of any contractual provision authorizing an offset, the *406 Commissioner not be so empowered. See, e.g., Grenafege v. Dep’t of Emp’t Sec., 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (“[A] general review of the statute leads us to the conclusion that, simply put, where the Legislature meant ‘wages’ to mean those earned in subject employment it said so, and that where it did not say so it intended no such restriction.”).
¶ 88. Persuasive decisions from other authorities further support the view that an aversion to “double-recovery” in workers’ compensation cases is not enough to vest the Commissioner with broad implied authority to adjust the statutorily mandated workers’ compensation benefits wherever necessary to avoid a double recovery.
¶ 89. In a factually similar case, the Colorado Supreme Court concluded that the employer was not entitled to offset workers’ compensation benefits for amounts paid under an employment plan. In Halliburton Services v. Miller, 720 P.2d 571, 573 (Colo. 1986) (en banc), the claimant suffered an injury and received disability benefits under the employer’s “Sickness Benefit Plan.” The Colorado division of labor later ruled that the claimant was entitled to workers’ compensation benefits for the disability, and denied the employer’s request to offset that amount by the benefits paid to the claimant under the company’s Sickness Benefit Plan. On appeal, the Colorado Supreme Court affirmed, holding that no offset was authorized because it was not provided for in the statutory scheme. Id. at 579. The court emphasized that the benefits the claimant received were mutually exclusive: the benefits paid under the company plan were for disabilities arising from nonworkplace injuries whereas the workers’ compensation benefits were for a workplace injury. Id. The court acknowledged that the employer “had a legitimate concern” that the employee had received payments under the Sickness Benefit Plan to which he was not entitled, but explained the proper remedy was to seek repayment from the claimant, not through an offset. As the court explained:
Nothing in the statute authorizes the commission to order reductions in a worker’s compensation award on the basis of benefits paid to a claimant under a separate and expressly unrelated plan simply because the commission’s determination of entitlement to worker’s compensation benefits incidentally proves that the claimant was not entitled to those separate payments.

*407
Id.

¶ 40. Other courts have similarly held that in the absence of express statutory authorization, or a contractual agreement, an employer’s liability to pay workers’ compensation benefits may not be offset by other employment-related disability benefits received by the employee. See, e.g., Sw. Bell Tel. Co. v. Siegler, 398 S.W.2d 531, 533 (Ark. 1966) (reversing offset of workers’ compensation award against disability payments made because disability payments were distinct benefits not made as advance payments of workers’ compensation benefits under contract and applicable statute); Simpson v. Frontier Cmty. Credit Union, 810 S.W.2d 147, 153 (Tenn. 1991) (reversing setoff against workers’ compensation benefits for disability benefits paid by employer where neither statute nor parties’ contract provided for setoff); cf. Hughes v. Gen. Motors Guide Lamp Div., 469 So. 2d 369, 377-78 (La. Ct. App. 1985) (explaining that employer entitled to credit for sums paid to claimant from employer’s disability advance fund that was designed to provide payment for employees until claim is deemed to be compensable workers’ compensation claim, where employee signed agreement by which she agreed to repay advances from fund in event her claim was found to be compensable).
¶ 41. These holdings are consistent with guidance from the most authoritative treatise on the subject. See 7 A. Larson & L. Larson, Workers’ Compensation Law (Matthew Bender rev. ed.). The critical factor identified by Larson in analyzing the analogous question of whether wage payments to an injured employee during the period of disability may offset the workers’ compensation benefits due from an employer for that period is whether the payment of wages was intended to be in lieu of the workers’ compensation benefits. Id. § 82.01. For this reason an “employer can claim no credit if it denied its worker’s compensation liability while paying the wages.” Id. § 82.03.[3]
*408 ¶ 42. The above authorities are persuasive. Pursuant to her employment contract, and wholly outside of the workers’ compensation process, claimant in this case received disability payments from employer for a nonoccupational injury. She then received workers’ compensation benefits for the same period for an occupational injury. No statute authorizes a reduction of the workers’ compensation benefits due to claimant, or confers authority on the Commissioner to reduce claimant’s workers’ compensation benefits on account of payments that were made wholly outside of the workers’ compensation process. Whatever right the employer may have to seek recoupment of the nonoccupational disability benefits it paid is wholly separate from claimant’s statutory entitlement to the workers’ compensation award under the workers’ compensation statute.
¶ 43. For these reasons, the majority cannot properly conclude that the Commissioner’s determination that she is not authorized to assess the credit requested by employer is clearly in error. The Commissioner’s authority is bounded by the limits set by the Legislature, and cannot be expanded even for reasons of fairness or equity. See Gintof, 2005 VT 8, ¶ 8 (explaining that Commissioner does not have ability to expand benefits beyond those provided for in statute).
II. Expansion of Commissioner’s Responsibility
¶ 44. Without express acknowledgment of this fact, the majority’s approach dramatically expands the Commissioner’s adjudicative responsibility to include contractual and equitable claims outside of the workers’ compensation system, and beyond the authority delegated to the Commissioner by the Legislature.
¶ 45. The premise of the entire majority opinion is that in the absence of a credit against claimant’s future workers’ compensation benefits claimant will enjoy a double recovery. Because of this presumed double recovery, the majority invokes policy considerations to require a credit in employer’s favor that is not described in the workers’ compensation statutes.
*409 ¶ 46. But the assumption that claimant has realized a double recovery in this case reflects a legal conclusion that employer has no contractual or equitable right to recover the nonoccupational disability benefits it paid to claimant. The majority has apparently concluded that in this case it does not. But that is both a factual and a legal determination that requires consideration of the claimant’s contract with her employer, an analysis of the applicable equitable principles, and possibly review of facts surrounding the employment relationship — all matters well outside of the historical scope of adjudicating a workers’ compensation claim.
¶ 47. The new rule of law established by the majority will require the Commissioner, in any case in which the employer or a third party contracted by the employer makes payments to an injured worker outside of the workers’ compensation laws, to evaluate the merits of any contractual and equitable claims the employer or a third-party insurer contracted by the employer has to recover payments it has made in the event the injured worker recovers weekly workers’ compensation temporary total disability benefits covering the same period. If the employer or third-party insurer has a right to recoup its payments, then the worker will not realize a double recovery and the employer will not be entitled to a credit.[4]
¶ 48. The Department of Labor is not a general jurisdiction court. The Legislature created the Department to administer various specified laws relating to labor and employment, including the workers’ compensation laws. 21 V.S.A. § 1. To that end, the Commissioner oversees the implementation of Vermont’s workers’ compensation laws, including the compliance of insurers and self-insured employers, provides informal guidance concerning the requirements of those laws, issues interim orders, and conducts formal hearings in contested cases. 21 V.S.A. §§601-711. The Commissioner’s authority does not extend to adjudicating statu *410 tory or common law claims between employer and worker beyond those expressly assigned by the Legislature to the Commissioner. See Vt. Ass’n of Realtors, Inc. v. State, 156 Vt. 525, 530, 593 A.2d 462, 465 (1991) (explaining that agency’s authority extends to those matters with nexus to area designated in agency’s enabling act).
¶ 49. Nor is the Commissioner equipped to undertake the new legal analysis assigned by the majority. In this case, the majority apparently concludes that the fact that claimant will realize a double recovery is self-evident. The merits of any contractual or equitable claim by the employer to recover the monies in question have not been briefed or argued, and are not actually before this Court. Even if I agreed that this Court could in this case fairly evaluate the legal and factual questions the majority has implicitly decided, I do not believe that at the level of informal adjudication and case processing, the Department is equipped to do so — in this case, or in the far more complex cases that may arise. Much of the day-to-day work of overseeing the implementation of the workers’ compensation process is undertaken by nonlawyer specialists in the Department. Although diligent and conscientious, they are not trained to evaluate contractual and equitable claims between employer and employee, or third-party disability insurer and employee. They are trained to apply Vermont’s workers’ compensation laws. The majority’s decision will force the Commissioner and her designees to adjudicate claims and disputes beyond her statutory authority and institutional capabilities.
III. Interference with Contracts and Complexity of Calculations
¶ 50. Although driven by considerations of public policy, the majority’s decision undermines sound policy in at least two respects: it gives the Commissioner the authority to override the terms of contracts negotiated and agreed to by the parties outside of the workers’ compensation process, and it brings unreasonable complexity to the calculation of workers’ compensation benefits.
¶ 51. Workers’ compensation benefits are a statutory entitlement. In contrast, employment-based disability benefits are not. Employment-based disability wage replacement benefit schemes take many forms, including the continuation of regular wages, distinct frameworks providing different levels of wage-replacement benefits for occupational and nonoccupational injuries, and supple *411 mental wage-replacement benefits that operate in addition to workers’ compensation benefits. Employers and employees are free to negotiate concerning the coordination of statutorily required workers’ compensation benefits with other contractual employment benefits. Except with respect to third-party tortfeasors, the workers’ compensation statute is silent as to whether workers’ compensation benefits are primary or secondary, or are additive or alternative to other benefits.
¶ 52. The approach employer advocates in this case would effectively override the parties’ own agreements on these points. Employees who gave valuable consideration in exchange for disability coverage could find the benefit effectively cancelled out by administrative fiat in the workers’ compensation system, even if their bargained-for package of benefits never contemplated such action. In most cases, employers are likely to negotiate to limit an employee’s benefits in a situation like this, either by requiring reimbursement of the nonoccupational disability benefits paid by the employer — an agreement wholly outside of the purview of the Commissioner, or by expressly agreeing that particular disability benefits are paid as advances toward workers’ compensation benefits and are to be credited against the benefits ultimately determined to be due. But where the parties’ own employment agreement does not contemplate an offset of statutory workers’ compensation benefits, an order imposing an offset upsets the negotiated agreement of the parties. See Roy’s Orthopedic, Inc. v. Lavigne, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985) (explaining that courts must enforce contracts as written).
¶ 53. The majority compounds the danger by indicating that its holding applies even if the workers’ compensation benefits or the employer-sponsored disability benefits are funded through third-party insurers. Ante, ¶ 16 n.1. By treating all nonoccupational disability benefits sponsored by the employer, and the workers’ compensation benefits paid on behalf of the employer as interchangeable, the majority increases the risk that contractual agreements between third-party insurers and employers will be upended. Third-party workers’ compensation carriers may be relieved of paying for benefits the employer contracted with them to pay on account of payments paid by the employers outside of the workers’ compensation process, and third-party disability insurers may be stuck paying benefits for what turn out to be occupational injuries, even though their contracts, and the actu *412 arial assumptions on which they are based, do not contemplate such payments. The majority’s approach potentially makes workers’ compensation secondary to other employer-provided benefits — a policy determination that is best left to the Legislature.
¶ 54. Moreover, given the wide variety of disability wage-replacement schemes that exist in the marketplace, a ruling authorizing the Commissioner to offset the workers’ compensation benefits due to claimant would introduce entirely new layers of complexity to the project of calculating disability benefits. Temporary total and temporary partial disability benefits are not subject to state or federal income tax. Some disability benefits are taxable, and some are not, depending on who paid the premiums for those benefits. Internal Rev. Serv., Pub. 525, https:// www.irs.gov/publications/p525/ar02.html#en_US_2015_publinkl000 229310, [https://perma.cc/5GC6-GZGX]. Disability benefits and workers’ compensation benefits may be calculated as different percentages of an employee’s pre-injury wages, subject to different minimum and maximum payments. And the two sets of benefits may be subject to different deductions, exclusions and limitations. This circumstance is completely different from the situations addressed in the workers’ compensation statute as noted above in which workers’ compensation benefits were paid and ultimately determined to be not due. In short, workers’ compensation benefits and disability benefits are generally apples and oranges, rendering the notion of an “offset” problematic at best.
¶ 55. This is a case in point. Although the primary issue before the Commissioner was whether to impose an offset, the parties had widely divergent views of how the offset should be calculated. In contrast to the days for which employer paid claimant her full salary as accrued sick days — transactions the Commissioner required employer to essentially unwind by crediting back claimant’s sick leave and adjusting the tax withholding, employer does not seek here to unwind the disability payments but, rather, seeks to apply them as credits against workers’ compensation temporary and permanent disability benefits. The employer emphasizes the amounts it paid pursuant to the nonoccupational disability provision in the CBA — nearly $25,000. But after taxes and other deductions, claimant received less than $15,000. Given these complexities, determining the appropriate credit, and tax treatment, in a wide variety of different circumstances involving a range of *413 disability programs, even if the Commissioner had authority to do so, would be onerous[5].
IV. Yustin v. Department of Public Safety
¶ 56. For the above reasons, we should not extend this Court’s limited holding in Yustin v. Department of Public Safety, 2011 VT 20, to the unlimited range of circumstances contemplated in the majority opinion.
¶ 57. In Yustin, the State of Vermont initially denied a workers’ compensation claim filed by state employee Yustin. Yustin drew employer-funded sick leave while challenging the denial of workers’ compensation benefits. The Department of Labor issued an interim order, concluding the injury was work-related and that claimant was entitled to past-due workers’ compensation temporary disability benefits. A State of Vermont personnel policy allowed an employee to use sick or annual leave during a “period of injury” and stated that “[a]ny sick or annual leave used for this injury will be reimbursed to the employee if the claim is approved for Workers’ Compensation indemnity.” Id. ¶ 3. Pursuant to the policy, the State applied the past due workers’ compensation payments to the employee’s sick leave account and reinstated the sick leave days the employee had used while prosecuting the workers’ compensation claim, essentially holding the claimant harmless “from any loss to his accumulated sick leave by the employer’s reimbursement to that account as called for in the personnel policy.” Id. ¶ 9. The employee challenged this procedure, arguing that the past due temporary total disability benefits should have been paid directly to him, and that the state unlawfully assigned his workers’ compensation benefits by appropriating them to itself to reimburse his sick leave account. This Court affirmed, explaining that this decision was consistent with the employer’s duties under both its employment contract and the workers’ compensation statute. Id. ¶ 10. Therefore, the employer fulfilled its “express statutory obligation by first paying full wage compensation in the form of sick leave benefits and, after the *414 Department’s interim ruling that the claim was compensable, by later paying temporary disability benefits as ordered.” Id. ¶ 9. In the course of its discussion, this Court emphasized the strong policy against double recovery of benefits reflected in Vermont’s workers’ compensation scheme.
¶ 58. The Yustin decision was problematic for many of the same reasons described above. See id. ¶¶ 15-29 (Dooley, J., dissenting). But this Court’s general recognition in that closely divided decision of a strong policy against “double recovery” of benefits in the workers’ compensation scheme should not be relied on to require the Commissioner to adjust workers’ compensation benefits payable to a claimant without regard to any particular statutory authority. The majority’s approach in this case goes far beyond the limited holding of Yustin. In Yustin, the Court relied heavily on the fact that the employer had a published personnel policy authorizing the challenged transaction. See id. ¶¶ 4, 9 (noting that Commissioner relied heavily on terms of applicable personnel policy in allowing employer to repay claimant’s sick leave account and stating that “[claimant was held harmless from any loss to his accumulated sick leave by the employer’s reimbursement to that account as called for in the personnel policy.” (emphasis added)). The question this Court answered in Yustin is whether honoring the published personnel policy was inconsistent with the Commissioner’s statutory obligations. This Court’s conclusion that it was not should not be read to support the far broader claim that even in the absence of such a contractual foundation the Commissioner is free to adjust workers’ compensation benefits to avoid a perceived double recovery. In contrast to the personnel policy in Yustin regarding repayment of sick and annual leave, the collective bargaining agreement in this case does not provide for any credit to the employer for workers’ compensation benefits payable for a period when the employee has received nonoccupational disability benefits.
¶ 59. A second factor distinguishes Yustin from this case. In Yustin, the employer was self-insured such that the payments to the claimant for workers’ compensation benefits and the payments for sick leave derived from the same source. The majority suggests that an employer’s self-insured status is irrelevant to the analysis, thereby allowing a credit to the employer or a third-party workers’ compensation insurer on account of payments made by the employer or a third-party disability insurer without *415 regard to the respective insurers’ contractual obligations vis-a-vis the employer or the injured worker. By delinking its holding in this case from the self-insured status of the employer for workers’ compensation purposes, and the fact that the nonoccupational benefits were paid directly by the employer, the majority dramatically expands the reach of Yustin while unmooring its analysis from the foundation on which Yustin rests.
¶ 60. Absent statutory authority for applying an offset, the Commissioner has no authority to offset statutory workers’ compensation benefits to account for transactions between employer and employee that took place outside of the workers’ compensation proceedings. The majority’s holding that not only authorizes, but apparently requires, the Commissioner to do so as a matter of law is inconsistent with our ordinary deference to the Commissioner on such matters, expands the Commissioner’s responsibilities beyond her statutory authority and expertise, undermines the private contracts, introduces unnecessary complexity into the calculation of workers’ compensation benefits, and expands this Court’s prior decision on the subject far beyond its rationale and holding. I would affirm.
¶ 61. I am authorized to state that Justice Dooley joins this dissent.

 The majority relies on this particular provision of the statute, asserting that it “clearly provides for an offset” under the facts of this case. Ante, ¶ 17. The application of this provision is anything but clear. It is limited to payments that “by the provisions of this chapter, were not due and payable when made.” 21 V.S.A. § 651. There is no dispute that the disability payments that claimant received here were due to her under the CBA, and not pursuant to the workers’ compensation statute. The payments fell outside the plain language of this provision.
The workers’ compensation statute does not provide an express provision allowing an offset or reimbursement of sick leave or disability benefits paid during a period of denial. Even Yustin acknowledged that this is true. 2011 VT 20, ¶ 8.

 At least one of the cases relied upon by the majority is entirely consistent with this view. The issue in Herrera v. Workmen’s Compensation Appeals Board., 455 P.2d 425, 428 (Cal. 1969), was whether the employer was entitled to credit on account of voluntary payments it had made to the injured worker, not payments due on account of a contractual obligation. Vermont’s workers’ compensation statute expressly authorizes such a credit. See 21 V.S.A. § 651 (stating that payments voluntarily made by employer to employee during period of disability that were not due and payable when made, may, subject to Commissioner’s approval, be deducted from amount to be paid as compensation). Two other *408 decisions support the majority’s position, although the opinion on which the majority primarily relies emphasized the significance of the employer’s self-insured status as to workers’ compensation benefits and wage continuation benefits, and the fact that both payments came from the employer’s corporate account rather than a third party insurer. Freel v. Foster Forbes Glass Co., 449 N.E.2d 1148, 1150-51 (Ind. Ct. App. 1983). The majority suggests that this distinction is of no moment here. See ante, ¶ 16 n.1.

 I assume the majority intends such a case-by-case review, and is not suggesting that the employer’s or third-party insurer’s right to recoup payments made to the injured worker outside of the workers’ compensation process is a nullity. If that’s not the case, and the majority is suggesting that the employer is entitled to a credit against workers’ compensation benefits in every case, without regard to the claimant’s legal obligation to repay a third-party insurer or an employer the benefits that have given rise to the perceived double recovery, then the ramifications of the majority’s decision in upending contractual arrangements between third-party insurers, employers, and employees are even more expansive and disruptive than this dissent describes. See infra, ¶ 52.

 Moreover, an approach that contemplates leaving the nonoccupational disability benefits in place but drawing down claimant’s workers’ compensation benefits to account for those other payments leads to a windfall for the state and federal government tax coffers. Contracting to unwind the nonoccupational disability benefits where the underlying injury was ultimately determined to be occupational is a far more sensible way to avoid a double recovery for the claimant.